UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHARLES D. SWANEY, Administrator of the Estate of Eric S. Jensen,

Plaintiff,

Case No. 3:25-cv-233

vs.

GREENE COUNTY BOARD OF COUNTY COMMISSIONERS, *et al*.,

Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

Defendants.

---

**ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 11) AS TO ALL CLAIMS AGAINST DEFENDANTS GREENE COUNTY SHERIFF'S OFFICE AND THE GREENE COUNTY ADULT DETENTION CENTER; (2) GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 11) AS TO PLAINTIFF'S WRONGFUL DEATH CLAIM AGAINST DEFENDANT GREENE COUNTY BOARD OF COMMISSIONERS; (3) DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 11) AS TO PLAINTIFF'S § 1983 FEDERAL CONSTITUTIONAL CLAIM AND WRONGFUL DEATH CLAIM AGAINST THE INDIVIDUAL DEFENDANTS; (4) DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 11) AS TO PLAINTIFF'S § 1983 FEDERAL CONSTITUTIONAL CLAIM AGAINST DEFENDANT GREENE COUNTY BOARD OF COMMISSIONERS; (5) REFERRING THIS CASE TO MAGISTRATE JUDGE PETER B. SILVAIN, JR., IN HIS ROLE AS MEDIATION COORDINATOR, TO ASSIGN THIS CASE TO THE APPROPRIATE MAGISTRATE JUDGE FOR MEDIATION; AND (6) CLARIFYING THAT DEFENDANTS GREENE COUNTY BOARD OF COMMISSIONERS AND THE INDIVIDUAL OFFICERS, NAMED AND UNNAMED, REMAIN IN THE LITIGATION**

---

In early June 2023, Eric S. Jensen committed suicide during his detention at the Greene County, Ohio Adult Detention Center. Plaintiff Charles D. Swaney now brings this civil case, as administrator of the estate of Eric S. Jensen[1] and through counsel, alleging, *inter alia*, one or more civil rights claims under 42 U.S.C. § 1983 against the Greene County, Ohio Board of

[1] Mr. Swaney's familial relationship to Eric Jensen, if any, is not set forth in the complaint.

Commissioners ("Board"); the Greene County Sheriff's Office ("GCSO"); the Greene County Adult Detention Center ("the Center"); numerous GCSO Officers;[2] and one or more unidentified John/Jane Doe Sheriff's Deputies.[3] Doc. No. 6.

The Court recognizes that Defendants have recently filed a motion for summary judgment (Doc. No. 22), which has not yet been fully briefed and is not ripe. Now pending before the Court is Defendants' joint motion for judgment on the pleadings. Doc. No. 11. Plaintiff filed a memorandum in opposition (Doc. No. 14), and Defendants replied (Doc. No. 15). The Court has carefully considered all of the foregoing, and the motion is ripe for decision. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Motion for Judgment on the Pleadings Standard

To challenge whether a plaintiff, in his or her complaint, states a claim upon which relief can be granted, a defendant may file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). "The only difference between Rule 12(c) and Rule 12(b)(6) is the timing" of when the motion is filed, *i.e.*, a Rule 12(b)(6) motion is filed before the defendant files an answer, whereas a Rule 12(c) motion is filed after the defendant files an answer. *Hunter v. Ohio Veterans Home,* 272 F.Supp.2d 692, 694 (N.D. Ohio 2003). Otherwise, the standard for reviewing a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) is the same. *Sensations, Inc. v. City of Grand Rapids*,

[2] The complaint identifies the following officers: Scott Anger, David Jones, Erin Hartpence, "Wilson (Officer ID: G307)," "Wilson (Officer ID: G380)," Dalton Hanser, Russell Reichley, Matthew Hoover, Zachariah Keyer, William Sayre, Tyler Bone, Mychael Dotson, Michael Seiter, Carloe Hartman, Ethan Lucas, Heath Grooms, Christopher Arias-Camacho, Chase Sicurella, Blake Bruce, Dariel Medina Ayala, Austin Lamb, Michael Hensel, Christopher Dowell (hereinafter referred to collectively as "the individual Defendants"). Doc. No. 1-2. The two officers with the last name of Wilson are now known, based on their Officer IDs, to be Andrew Wilson and Michael Wilson. *See* Doc. No. 11 at PageID 182, 187.

[3] The complaint sometimes uses the title "Deputy" and elsewhere uses the title "Officer." *E.g.,* Doc. No. 6 at PageID 130–31. In this Order, the Court employs the title "Officer" consistent with the GCSO's use. *See* Doc. No. 11 at PageID 184; https://sheriff.greenecountyohio.gov (last visited September 17, 2026).

526 F.3d 291, 295 (6th Cir. 2008). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II. Facts

The facts set forth herein are those alleged by Plaintiff in his complaint. On April 1, 2023, Eric S. Jensen ("Eric") was arrested after an alleged domestic dispute with his stepfather, and he was charged with domestic violence and assault in the Xenia Municipal Court. Doc. No. 1-2 at PageID 16. He was then released on bond and required to wear a GPS monitor. *Id.*

Approximately seven weeks later, on May 26, 2023, a Clark County Sheriff's Officer conducted a welfare check on Eric at his home after he sent text messages to his mother containing suicidal ideations and/or threats of suicide. *Id.* The responding officer took him to the hospital for treatment for his mental health pursuant to a "pink slip." *Id.* The "pink slip" allegedly indicated Eric was a substantial and immediate risk for physical self-harm. *Id.* He remained at the hospital for one day and was released to his mother's care. *Id.*

Four days later, on May 30, 2023, Eric met with his bond officer and was arrested—for reasons not set forth in the complaint—and incarcerated for allegedly violating the conditions of his bond. *Id.* Officers Hanser, Hartpence, and Wilson "participated in the intake and booking of Eric" at the Greene County Detention Center. *Id.* The complaint identifies Hartpence as the "Booking Officer" and alleges he administered the "admissions questionnaire," *i.e.*, the booking intake form. *Id*. at PageID 9, 17–18. The booking intake form has two questions Hartpence presumably asked Eric concerning suicide: (1) "[H]ave you ever made a suicide attempt[?]" and (2) "Are you suicidal at this time[?]" *Id.* The intake form also has a line for the "Booking Officer"

to indicate whether the detainee's behavior indicates a risk of suicide. *Id.* Someone marked "no" to both questions on the intake form. *Id*. At this early juncture of the case, based on the complaint and answer before the Court, the Court is unable to determine who marked the responses on the booking intake form.

"[T]he Greene County Sheriff's Department…did not place Eric on suicide watch[,] and he was not evaluated by any medical or mental health staff based on the suicide threats made May 26, 2023." *Id.* at PageID 18. Further, Hartpence "prepared an 'Incident Report' based off an alleged altercation with Eric during the booking process…'charging' Eric with 'disobedience of a direct order' and 'assault.'"[4] *Id.*

The next day, May 31, 2023, Eric was transported to the hospital for tremors, diaphoresis and anxiety, apparently due to alcohol withdrawal. *Id.* Because he had been previously diagnosed with depression, he was prescribed Zoloft. *Id*. During his hospital stay, Eric was not allowed to make phone calls to his family while under the supervision and custody of an unknown Greene County Officer. *Id.* A victim's advocate assigned to Eric called his mother and stepfather to let them know he was in the hospital. *Id.* On that call, Eric's parents told the victim's advocate about his recent suicidal thoughts and hospital stay on May 23, 2023.[5] *Id.* Eric's mother told the victim's advocate about her fear Eric might commit suicide and his struggle with depression. *Id.* Eric's mother then attempted to call the hospital at least twice to check on Eric, but she was not allowed to speak with him. *Id.* at PageID 19. Thereafter, an unidentified Officer, named here as a John/Jane Doe Defendant, phoned Eric's mother and told her not to call the hospital again since Eric was still in GCSO's custody. *Id.* On that call, Eric's mother told the Officer that Eric was recently suicidal,

[4] The complaint details no further information about this incident. *See* Doc No. 1-2 at PageID 18.
[5] The victim's advocate is not a named defendant here. *See id.* at PageID 6–7.

but the Officer allegedly said it was not his problem. *Id.* Eric's mother and stepfather then went to the Greene County Prosecutor's Office to express their concerns about Eric's recent suicidal threats and their genuine concern for his safety. *Id.* They talked with both a pretrial officer and an office assistant for the prosecutor regarding their safety concerns, neither of whom are named Defendants here. *See id.* There are no further allegations in the complaint related to these discussions.

The hospital discharged Eric on June 3, 2023, and he was returned to the Center. *Id.* Eric told his mother during a phone call on June 3rd that he had no access to his medication—including Zoloft—while in the Center. *Id.* at PageID 18–19. Between June 3, 2023, and June 5, 2023, Eric called his mother approximately fifteen times, describing his fear and treatment at the Center. *Id.* at PageID 20. During his final call, after he had an administrative hearing at the Center concerning the incident report pending against him, Eric told his mother that he was being put "in the hole," and he was scared. *Id.* His last words to her were, "I love you, mom." *Id.*

Two days after his hospital discharge, on June 5, 2023, Eric committed suicide by hanging himself with a bedsheet while still a detainee at the Center. *Id.*

Plaintiff, the administrator of Eric's estate, now brings this action claiming, under § 1983, "Defendants were deliberately indifferent to Eric Jensen's risk of serious injury and suicidal ideations in violation of his rights protected by the Fourteenth Amendment to the United States Constitution." *Id.* at PageID 23. Plaintiff also raises a wrongful death claim under Ohio law. *Id.*

at PageID 21. With regard to the individual Defendants, Plaintiff brings claims against them in both their individual and official capacities.[6]

Plaintiff alleges the Center has a written policy titled "Suicide Prevention Program," which is attached to the complaint, and Defendants failed to follow it with respect to Eric. *Id.* at PageID 20; *see id.* at PageID 29–36. Specifically, when he returned to the Center on June 3, 2023, after his hospitalization, Eric did not receive an evaluation from a mental health counselor and was not placed on a suicide watch. *Id.* at PageID 20.

## III. Analysis

In their motion for judgment on the pleadings, Defendants set forth the following arguments: (1) the individual Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims; (2) GCSO and the Center are not *sui juris*, *i.e.*, are not entities capable of being sued; (3) Plaintiff's complaint fails to satisfy pleading requirements in support of his claim for deliberate indifference under § 1983 by, amongst other alleged deficiencies, engaging in "group pleading"; and (4) the Board and the individual Defendants are immune from Plaintiff's wrongful death claim through Ohio's statutory political subdivision immunity. *See* Doc. No. 11.

### A. Qualified Immunity

Under the doctrine of qualified immunity, "[s]tate officers are shielded from civil liability for their actions unless they have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bambach v. Moegle*, 92 F.4th 615, 622 (6th Cir. 2024) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity ensures

[6] "[A] section 1983 action against [an official] in his or her official capacity is treated as an action against the [public] entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, Plaintiff's official capacity § 1983 claims against the individual Defendants are, in actuality, claims against Greene County. *See Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 825 (S.D. Ohio 2002).

"that wronged individuals can vindicate their constitutional rights while simultaneously reducing the social costs that result from subjecting public officials to increased litigation, like the distractions officials may face in contending with numerous lawsuits and the deterrent effect such litigation might have on otherwise capable people who choose not to enter public office." *Id.* (citing *Harlow*, 457 U.S. at 813–14).

A defendant "'bears the burden of pleading' a qualified immunity defense," but it is ultimately the plaintiff's burden to show why the defendant is *not* entitled to qualified immunity. *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022) (quoting *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017)). There is a two-part test to overcome the defense of qualified immunity in a motion to dismiss or motion for judgment on the pleadings: (1) "the complaint must plausibly allege facts showing that the official violated a plaintiff's constitutional rights" and (2) "this right was clearly established at the time of the violation." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1003 (6th Cir. 2024) (citing *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659–60 (6th Cir. 2021)).

Whether a defendant is entitled to qualified immunity is a threshold question. *Harlow*, 457 U.S. at 818. Thus, a district court cannot defer a decision on qualified immunity simply because it arises in the context of a Rule 12 motion. *Myers v. City of Centerville*, 41 F.4th 746, 758–59 (6th Cir. 2022). To that end, "because qualified immunity is a defense not just to liability but to having to litigate the suit itself, a district court must resolve the question as soon as possible." *Saalim*, 97 F.4th at 1003 (citing *Myers*, 41 F.4th at 758). However, "[a]lthough a defendant's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.'" *Moderwell*, 997 F.3d at 660 (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)). Although a district court must conduct an analysis of the qualified immunity question, if raised, at the Rule 12

stage to determine whether a plaintiff has plausibly overcome the defense of qualified immunity, *see Myers*, 41 F.4th at 756, it is generally inappropriate to grant a Rule 12 motion on the basis of qualified immunity. *See Wesley*, 779 F.3d at 433; *see also Venema v. West*, 133 F.4th 625, 637 (6th Cir. 2025).

**1. The Fourteenth Amendment**

It is well-established, and indeed, was clearly established at the time of the events in question in this case, that pretrial detainees have the right, under the Fourteenth Amendment, to be free from deliberate indifference to their serious medical needs. *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020). The deliberate indifference test for pretrial detainees, like Eric, has objective and subjective prongs. *See Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 315 (6th Cir. 2023). As to the objective prong, the question is whether the plaintiff suffered from, or had, an objectively serious medical need. *Greene v. Crawford Cnty. Mich.*, 22 F 4th 593, 607 (6th Cir. 2022). The subjective prong requires only recklessness for pretrial detainees—as opposed to actual knowledge required in § 1983 cases involving a prisoner serving a criminal sentence—such that "a jury could find that…need for immediate medical attention was 'known or so obvious that it should [have been] known to [defendant.]'" *Id.* at 610 (first alteration in original) (quoting *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)).

Plaintiff alleges sufficient facts, when accepted as true, to show his mental health problems, especially his suicidal ideation and depression, constituted an objectively serious medical need. *See* Doc. No. 1-2 at PageID 16–20; *Griffith*, 975 F.3d at 566. Further, Plaintiff alleges sufficient facts, when accepted as true, to subjectively show Eric's need for medical attention was obvious and should have been known to Defendants. *See* Doc. No. 1-2 at PageID 16–20.

Further, Plaintiff alleges that, at the time of the events in question, there was a Center Suicide Prevention Program policy that also put the officers on notice of this right. *See id.* at PageID 29–36. Thus, not only was Eric's right to be free from deliberate indifference to his serious medical needs, *i.e.*, his suicidal tendencies, clearly established at the time of the alleged violation, but individual Defendants also had notice of it. *See Batton v. Sandusky Cnty., Ohio*, Case No. 23-3168, 2024 WL 1480522, at *6–7 (6th Cir. Apr. 5, 2024); *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 425 (6th Cir. 2006) ("[A]mple case law teaches that deliberate indifference toward a detainee's suicidal tendencies is a violation of Constitutional rights[.]"); *see also Moderwell*, 997 F.3d at 660 (explaining that "[t]he Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.") (citations and quotations omitted)).

**2. Plausibility**

Defendants next contend Plaintiff's complaint fails to allege facts showing "any *specific* Defendant" had actual knowledge of a sufficiently serious medical issue. Doc. No. 11 at PageID 191. Thus, Plaintiff arguably fails to plead the "*essential* piece of deliberate indifference." *Id.* (Defendants' emphasis). Defendants further argue, "[t]here are no *specific actions* that could be construed as wrongdoing above a 'speculative level.'" *Id*. at PageID 192 (Defendants' emphasis).

Plaintiff alleges in the complaint, "[d]uring his time at the Center, Eric demonstrated symptoms consistent with alcohol withdraw[al] and experienced hopelessness and depression." Doc. No. 1-2 at PageID 20. It is reasonable to infer from this, and from the allegation that it was necessary to take Eric to the hospital on May 31, 2023—only one day after he was initially booked into the Center—that some individual Officers observed the serious nature of Eric's mental health

struggles. It is also reasonable to infer that when Eric was initially taken to the Center on May 30, 2023, booking Officers Hanser, Hartpence, and Wilson, *id*. at PageID 17, were among the officers who had direct contact with Eric and thus observed, or should have realized, he was struggling with mental health issues. Additionally, when Eric was returned to the Center on June 3, 2023, because of his multiple recent hospitalizations and prescription for Zoloft for depression, Officers knew or should have known about Eric's suicidal ideations and therefore the risk of suicide he presented. *Id.* at PageID 18–19; *see Craddock v. Wellpath, LLC*, No. 24-1536, 2025 WL 278577, at *3 (6th Cir. Jan. 23, 2025) ("[A] detainee need only prove that the officers recklessly disregarded a risk so obvious that they either knew or should have known of it.") (internal citation and quotations omitted). Further, Plaintiff alleges "an unidentified Sheriff's Deputy" told Eric's mother to stop calling the hospital about him. Doc. No. 1-2 at PageID 19. During the same call, Plaintiff alleges that Eric's mother explained he was recently suicidal and hospitalized on May 26, 2023, but the "Sheriff Deputy stated that it was not his problem[.]" *Id.* Finally, because of Eric's recent mental health history and need to be hospitalized, it is plausible that any officer who interacted with Eric—including, *inter alia*, Hanser, Hartpence, and Wilson—allegedly showed a deliberate indifference toward his suicidal tendencies. *See Linden*, 167 F. App'x at 425 (explaining that an officer could be found deliberately indifferent toward a pretrial detainee's suicidal tendencies when he ignored warnings to "keep an eye" on that detainee).

While the indication in the booking intake form that Eric was not suicidal may cut against a finding the Booking Officer knew, or should have known, Eric presented a strong likelihood of committing suicide, *see Craddock*, 2025 WL 278577, at *3, at best for Defendants, the intake form may create an issue of fact concerning the Booking Officer's knowledge given Eric's subsequent hospitalization for mental health issues, his prescription for Zoloft, and the allegations that Eric

and his family members attempted to make, and did make, to ensure the Defendant Officers were aware of Eric's mental health concerns and his likelihood of suicide. *See, e.g.*, Doc. No. 6 at PageID 143 ("[Eric's mother] received a call from an unidentified Sheriff Deputy who told her not to call the hospital again because Eric was an inmate in Greene County's custody. Eric's mother explained that Eric was recently suicidal causing him to be 'pink slipped' on May 26, 2023. The Sheriff Deputy stated that it was not his problem, and that [Eric's mother] should go discuss the issue with the prosecutor and judge. . . . [Eric's mother] and Harold explained to both the pretrial officer and office assistant for the prosecutor the identical information relayed to the Victim's Advocate and Sheriff Deputy concerning the recent suicidal threats, need for mental health treatment, and genuine concern that Eric may commit suicide").

In some cases, qualified immunity applies because the detainees disclaimed being suicidal. *See Downard for Est. of Downard v. Martin*, 968 F.3d 594, 601–02 (6th Cir. 2020); *Lawler ex rel. Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919, 931 (6th Cir. 2024). Here, the only allegation in the complaint that may lead to an inference of Eric disclaiming being suicidal was the booking intake form allegedly being marked "no" in response to: (1) "Have you ever made a suicide attempt[?]" and (2) "Are you suicidal at this time[?]" Doc. No. 6 at PageID 141. However, the complaint is silent as to the individual who filled out the booking form—Eric or an individual Defendant. Given that an altercation allegedly occurred during the booking intake process and that Eric is deceased, it is plausible to infer that the booking form was not filled out accurately. This is further supported by (1) Eric's many calls to his mother regarding his treatment in the Center and (2) his family contacting officers, in response, to alert them to Eric's recent suicidal threats.

The remaining individual Defendants worked at the Center within the time period that Eric was detained there prior to his suicide. *See* Doc. No. 6 at PageID 144, 146. Defendants argue Plaintiff's complaint is purely a "group pleading," which is historically disfavored in the Sixth Circuit. Doc. No. 11 at PageID 192 (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). While Plaintiff does not provide distinct allegations for each individual Defendant, he does allege certain Center employees were aware, or should have been aware, of Eric's prescription for Zoloft for depression—which he was prescribed but not given while at the Center—and likewise were aware, or should have been aware, of Eric's recent pink slip for suicidal threats. Doc. No. 6 at PageID 142–43. Additionally, Plaintiff's complaint adequately places individual Defendants on notice of the allegations against them because it is specific to Eric's circumstances and his time at the Center. *See Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 893 (N.D. Ohio 2025). As such, at the pleading stage, these allegations are sufficient to plausibly overcome the qualified immunity defense as to the individual Defendants. *See Hart v. Hillsdale Cnty., Mich.*, 973 F.3d 627, 640 (6th Cir. 2020). It is plausible that these individual defendants violated the Fourteenth Amendment, as they would have been in direct contact with Eric when, as Plaintiff alleges, there were ample signs of Eric's suicidal ideation and signs of depression.

Discovery is warranted in this case because there are "very few facts to define and limit any holding" as to the constitutional question presented here. *Robinette v. Jones*, 476 F.3d 585, 592 (8th Cir. 2007). "Winnowing the defendants is not possible until an evidentiary record is developed." *Hart*, 973 F.3d at 640. Even with limited allegations, it is plausible, based on the facts alleged in the complaint in this case, that: (1) the officers knew, or should have known, of Eric's risk for suicide; and (2) the officers were deliberately indifferent in response to that potential risk, even with the clearly established obligation to act if that risk existed. *Cf. Brawner*, 14 F.4th

at 597 (explaining that a pretrial detainee can prove deliberate indifference when they demonstrate that an official deliberately or recklessly failed to mitigate a serious medical risk that should have been known to a reasonable official) (citation omitted). As such, the Court denies judgment on the pleadings as to qualified immunity.

Since Eric is deceased and thus not able to indicate more details relating to the officers he interacted with, Plaintiff must base his allegations based on limited, presently available records. Discovery and more thorough document review is needed to determine which officers, of those named, had contact or interactions with Eric before his suicide on June 5, 2023. *See Doe v. JRD P'ship*, No. 3:23-cv-00928, 2025 WL 1097335, at *11 (M.D. Tenn. Apr. 10, 2025) ("[T]his more general method of pleading can be appropriate in cases where additional discovery may be required to more fully clarify the role played by each of the [m]oving [d]efendants"). Thus, the efficient and appropriate way forward is to permit discovery to occur and consider Defendants' qualified immunity argument, if renewed on summary judgment, not earlier at the Rule 12 phase of the litigation. *See, e.g.*, *Meriwether v. Hartop*, 992 F.3d 492, 514 (6th Cir. 2021).

**B. *Sui juris***

The Court agrees with Defendants that "[p]olice departments are not *sui juris*, meaning they are not capable of suing or being sued." *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002) ("Police departments are not *sui juris*; they are merely sub-units of the municipalities they serve"); *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987) (dismissing a police department as an improperly named party to the action). The same is true as to the Center. *See Mayfield v. Ohio*, No. 21-cv-286, 2022 WL 1458299, at *1 (S.D. Ohio May 9, 2022), *report and recommendation adopted*, No. 3:21-cv-286, 2022 WL 2307158 (S.D. Ohio June 27, 2022). Plaintiff also agrees. Doc. No. 14 at PageID 221. Thus, Defendants' motion for

judgment on the pleadings is **GRANTED** as to Defendants GCSO and the Center, and those parties are **DISMISSED** from this case without prejudice.

**C. Ohio Wrongful Death Claim**

In the motion for judgment on the pleadings, Defendants also raise arguments in response to Plaintiff's Ohio wrongful death claim. *See* Doc. No. 11 at PageID 195–202; Doc. No. 15 at PageID 235–39. Specifically, Defendants contend: (1) Defendant Board is immune from the wrongful death claim under Ohio Revised Code § 2744.03(A), Ohio's political subdivision immunity statute; (2) the individual Defendants are also immune from that claim in their individual capacities under R.C. § 2744.03(A)(6); and (3) Plaintiff fails to plausibly plead a wrongful death claim under Ohio law. Doc. No. 11 at PageID 195–202. For the reasons set forth below, the Court **GRANTS** Defendant's motion for judgment on the pleadings as to the wrongful death claim against Defendant Board and **DENIES** the motion as to that claim against the individual Defendants.

First, as to whether the Defendant Board is immune from Plaintiff's wrongful death claim under O.R.C. § 2744.03, the Court deems this issue waived by Plaintiff. In his response in opposition to Defendants' motion for judgment on the pleadings, Plaintiff offers no real analysis on this issue, other than arguing that the political subdivision immunity argument as to the Defendant Board should be deemed premature. Doc. No. 14 at PageID 223–24. Notably, Plaintiff's response does not even mention the analysis required to determine whether O.R.C. § 2744.03 does or does not apply with respect to the Board under the facts of this case. *See id*. As the Sixth Circuit has noted, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones."

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)) (collecting cases). Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings as to the wrongful death claim against the Defendant Board.

Second, as to whether the individual Defendants are immune from Plaintiff's wrongful death claim under O.R.C. § 2744.03(A)(6), the Court believes the most efficient and appropriate way forward is to consider this argument on summary judgment. *See, e.g.*, *Meriwether*, 992 F.3d at 514. The Court notes that, under O.R.C. § 2744.03(A)(6)(b), a political subdivision's employee is not immune from civil liability if "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" This is a fact-intensive inquiry, *see Shoup v. Doyle*, 974 F.Supp.2d 1058, 1090 (S.D. Ohio 2013), and, as set forth above, Plaintiff has plausibly pled that the individual Defendants were recklessly indifferent to Eric's risk of suicide. Given this, and the procedural posture of this case—discovery has been completed, and Defendants have since filed a motion for summary judgment (Doc. No. 22)—proceeding in this manner will ensure that the Court reviews this argument in light of further factual development and will guarantee that consideration of this argument is not premature. *See Wilson v. Gregory*, 3 F.4th 844, 861 (6th Cir. 2021); *Mercer v. Athens Cnty., Ohio*, 72 F.4th 152, 165–66 (6th Cir. 2023); *cf. Nuchols v. Berrong*, No. 04-5645, 2005 WL 1634370, at *2 n.2 (6th Cir. July 11, 2005) ("Because a more developed record would be useful in resolving such a difficult issue, we conclude here that the issue should be decided in the context of a summary judgment motion rather than at the pleading stage.").

Finally, the Court notes that Plaintiff has adequately pled an Ohio wrongful death claim against the individual Defendants. Defendants contend they owed Eric no duty because Eric's

suicide was unforeseeable. *See* Doc. No. 11 at PageID 196–97. However, under Ohio law, a jailer owes a pre-trial detainee a duty of reasonable care and protection from unreasonable risks. *Cf. Woods v. Ohio Dep't of Rehab. & Corr.*, 130 Ohio App.3d 742, 744–45 (10th Dist. 1998) ("In the context of a custodial relationship between a state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks.") (citation omitted). Further, Plaintiff's complaint also alleges that the individual Defendants were, at the time of the events in question, subject to a Suicide Prevention Policy, which "plainly states that each employee of the Jail is responsible for the detection and prevention of suicide[.]" Doc. No. 1-2 at PageID 15.

Ultimately, whether the risks posed to Eric were in fact foreseeable depends on the "surrounding circumstances" of what Defendants knew or should have known at the time of their actions. *See Jeffers v. Olexo*, 43 Ohio St. 3d 140, 143 (1989) (explaining that the foreseeability of a given injury is a fact-intensive inquiry). As explained above, Plaintiff has plausibly pled that the individual Defendants knew or should have known that Eric presented a strong likelihood of suicide. *See supra* Section III.A.2. Thus, at this juncture, it is at least plausible, under the federal Rule 12 pleading standards, that Eric's suicide was foreseeable. *See Fischer v. Morales*, 38 Ohio App.3d 110, 112 (10th Dist. 1987) (explaining that while the general rule is that suicide is an intervening force which breaks the chain of causation, a defendant will not be relieved of liability by an intervening force which was reasonably foreseeable). Nonetheless, the Court agrees with Plaintiff that to determine whether Eric's suicide was indeed foreseeable, further factual development is required. *See* Doc. No. 14 at PageID 222–23. Therefore, the Court will address the issue of foreseeability, if raised, on summary judgment. Consequently, the Court **DENIES** Defendants' motion for judgment on the pleadings as to the wrongful death claim against the individual Defendants on this ground.

## IV. Conclusion

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for judgment on the pleadings filed by Defendants. Doc. No. 11. No claims remain pending against Defendants GCSO and the Center, and they are dismissed from this case. The following claims remain pending in this case: (1) § 1983 federal constitutional claim and an Ohio wrongful death claim against the individual Defendants; and (2) § 1983 federal constitutional claim against the Defendant Board.

Finally, this matter is hereby **REFERRED** to Magistrate Judge Peter B. Silvain, Jr., as mediation coordinator, for the purpose of assigning this case for mediation. The date for the mediation conference(s) shall be arranged directly with the assigned Magistrate Judge.

**IT IS SO ORDERED**

September 17, 2026

s/*Michael J. Newman*
Hon. Michael J. Newman
United States District Judge